IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MAGPUL INDUSTRIES, CORP.,

    Plaintiff,

v.

BLUE FORCE GEAR, INC.,

    Defendant.

Civil Action No. CV414-277

## COMPLAINT FOR DECLARATORY JUDGMENT

### NATURE OF THIS ACTION

1. This is an action seeking Declaratory Judgment that United States Patent No. 8,733,601 (the '601 Patent), which is owned by Defendant Blue Force Gear, Inc. ("Blue Force Gear" or "Defendant"), has not been infringed by Magpul Industries, Corp. ("Magpul" or "Plaintiff") and is invalid.

2. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, Title 35 of the United States Code.

### PARTIES

3. Plaintiff Magpul is a Delaware corporation with its principal place of business located in Louisville, Colorado. Plaintiff's business consists primarily of the design, manufacture, and sale of products that are used as accessories to firearms. Among other things, Magpul designs, manufacturers, and sells weapon slings, including Magpul's Multi-Mission Sling System.

4. Defendant Blue Force Gear is a Georgia corporation with its principal place of business in Pooler, Georgia. Defendant also makes and sells firearm accessories—such as, packs, slings, rifle cases, and load-carriage equipment.

1

5. Magpul and Blue Force Gear are direct competitors, and have an ongoing dispute regarding their respective legal rights to manufacture and sell weapon slings, specifically Magpul's right to manufacture and sell its MS1 Multi-Mission Sling System and later iterations, which include the MS3 Gen II and MS4 Gen II slings.

## JURISDICTION AND VENUE

6. This is a declaratory judgment action brought under 28 U.S.C. §§ 2201 and 2202.

7. The Court has subject matter jurisdiction for this action under 28 U.S.C. §§ 1331 and 1338(a), in that it arises under the United States Patent Laws.

8. Defendant is subject to this Court's specific personal jurisdiction because of the intended and actual effects of Defendant's actions in making accusations of patent infringement implicating Magpul, which includes rectifying the alleged loss of business that Blue Force Gear attributes to Magpul's competition.

9. Upon information and belief, Defendant conducts business in this Judicial District, has committed the acts complained of in this Judicial District, has communicated accusations and threats relating to the subject matter of this action to an individual who was, and still is, located within this judicial district, and has caused injury to Plaintiff within this Judicial District by virtue of the accusations that are described herein.

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b) because Defendant is making accusations and threats of patent infringement in this Judicial District. Additionally, venue is proper in this Judicial District because Defendant is transacting business, doing business, and/or soliciting business and committing the acts complained of herein in this Judicial District and elsewhere in the United States. Finally, venue is proper in this Judicial District because Defendant's principal place of business is located in this Judicial District.

## BACKGROUND FACTS

**Blue Force Gear Accuses Magpul of Patent Infringement and Threatens Litigation**

11.     On information and belief, Larry Vickers is a retired U.S. Army veteran with years of experience in the firearms industry as a combat marksmanship instructor and industry consultant. He hosts tactical firearms-related TV shows on the Sportsman Channel. On information and belief, Vickers has developed various firearms accessories. According to his web site, one of his "most notable" firearms accessories has been "his signature sling manufactured by Blue Force Gear."

12.     According to Blue Force Gear's marketing materials, Vickers and Blue Force Gear embarked on a joint venture to create a "two-point" quick-adjust rife sling, with the goal of developing and marketing a product that addressed the failings of existing designs that were identified by Vickers. Based on inventive contribution by both Vickers and Blue Force's CEO, Ashley Burnsed, they jointly developed the rifle sling at issue, the Blue Force Gear® Vickers Combat Application Sling™.

13.     According to Blue Force Gear's marketing materials, Vickers and Burnsed exchanged a number of prototypes before agreeing on the final design. Blue Force Gear sought patent protection for the Vickers Combat Application Sling, submitting an application that would ultimately result in the issuance of the patent-in-suit.

14.     On information and belief, Blue Force Gear engaged Vickers as its agent for the purposes of marketing the Blue Force Gear Vickers Combat Application Sling and promoting Blue Force Gear. According to Blue Force Gear marketing materials, Vickers and Blue Force Gear have jointly sold "many thousands" of their sling, including making substantial sales to the U.S. Military.

15.     On information and belief, Blue Force Gear makes regular monetary payments to Vickers in exchange for his acting as the company's agent and promoting the Blue Force Gear Vickers Combat Application Sling including, but not necessarily limited to, paying him a royalty for each sling that is sold.

16. Subsequently, Magpul developed its own rife sling, the MS1 Multi-Mission Sling System, as well as further iterations on its original design (including its MS3 Gen II and MS4 Gen II slings). There are substantial differences between the Magpul sling and the Blue Force Gear Vickers Combat Application Sling including its manufacturing materials, custom hardware, and overall design.

17. Nevertheless, Vickers—acting as an agent of Blue Force Gear—aggressively engaged Magpul's sales and business development employee Drake Clark over Magpul's introduction of its own rifle sling. Vickers engaged Clark in a telephone call in Colorado in which he forcefully accused Magpul of stealing their design for a sling. Using an adversarial tone, he repeatedly asserted that the Magpul sling was an identical copy of the Blue Force Gear Vickers Combat Application Sling.

18. Vickers stressed that there was a patent pending for the Blue Force Gear Vickers Combat Application Sling. He acknowledged that their initial patent prosecution attorney had done a poor job in obtaining patent coverage in the past, but that a new attorney was able to obtain much broader claims. Clark sought to convince Vickers that Magpul's sling was not a copy, and pointed out design differences. But Vickers would have none of this, and repeatedly and aggressively stated that the Magpul's sling was an identical copy of their patent-pending design. And they believed that Magpul should be paying a royalty or otherwise be making a monetary payment for the alleged use of the design for the patent-pending Blue Force Gear Vickers Combat Application Sling. To this end, Vickers suggested that Clark contact Blue Force Gear's CEO, Ashley Burnsed, to discuss such an arrangement.

19. As such, Clark visited the Blue Force Gear's "courtesy room" at a "Special Operations Forces Industry Conference," which was held in Tampa, Florida in May, 2014, and met with Burnsed. Once again, Clark sought to convince them that Magpul's sling was not a copy, and pointed out design differences. But Burnsed too would have none of this, and repeatedly stated that the Magpul's sling was a copy of their patent-pending design. And he accused Magpul of stealing their sales.

20. As with Vickers, Burnsed acknowledged that their initial patent prosecution attorney had done a poor job in obtaining patent coverage for the Blue Force Gear Vickers Combat Application

Sling in the past, but they were soon going to obtain a patent with much better claims. And he indicated that Magpul would need to pay a royalty upon issuance of their patent or else there would be unpleasant ramifications. He noted that Magpul did not want to "get wrapped up in lawyers," and implied that the alternative to getting "wrapped up in lawyers" was to pay a royalty.

21. Burnsed never used legal terms like "patent infringement." Clark, a former police officer, formed an impression based on body language, tone of voice, and repetition of statements, that Burnsed has been coached as to what to say. But Clark perceived the entire conversation as a veiled threat. And he left the conversation with the clear belief that they were going to press their claim against Magpul after their patent issued for the Blue Force Gear Vickers Combat Application Sling.

**Blue Force Gear's Aggressive Enforcement Behavior**

22. Prior to the '601 Patent issuing, Burnsed informed Blue Force Gear employees that Blue Force Gear would be enforcing its sling patent against everyone making slings, which includes Magpul. Blue Force Gear's behavior prior to and post issuance of the '601 Patent corroborates this statement.

23. On or about April 15, 2014—more than a month before the '601 Patent issued—Blue Force Gear sent at least one cease and desist letter demanding the immediate cessation of all sales and manufacturing of products Blue Force Gear believed infringed its yet to issue '601 Patent.

24. Savvy Sniper LLC was the recipient of such a letter. *See* Exhibit A. Blue Force Gear carbon copied six individuals/entities on its cease and desist letter to Savvy Sniper. These individuals include the Defense Logistics Agency ("DLA") Contact Center, two individuals at the DLA Land and Maritime division, Kevin Pallugna, Kristina Wolf, and Domonique Hazell-Stallwoth.

25. Upon information and belief, the individuals carbon copied on the April 15, 2014 cease and desist letter to Savvy Sniper received copies of the letter as part of Blue Force Gear's aggressive enforcement strategy which includes extra-judicial as well as judicial efforts to eliminate competition.

26. On or about May 12, 2014, 15 days prior to the '601 Patent issuing, Blue Force Gear sent a second cease and desist letter to Savvy Sniper threatening litigation if the alleged infringement did not cease.

27. In June 2014, Blue Force Gear sues Savvy Sniper, as well as ATS Tactical Gear, LLC and Raine, Inc., for patent infringement, tortious interference with business relations under Georgia law based on patent infringement, and violation of Georgia Uniform Deceptive Trade Practices Act based on patent infringement. Moreover, in all three lawsuits Blue Force Gear filed complained that direct sales to the DLA and indirect sales under DLA contracts violated its rights.

28. On September 4, 2014, Blue Force Gear filed two Bid Protests with the Government Accountability Office ("GAO") protesting a bid granted by the DLA. Both Bid Protests were subsequently dismissed on September 29, 2014.

29. On October 6, 2014, Blue Force Gear filed a Bid Protest with the GAO protesting a bid granted by the DLA. The Bid Protest was subsequently dismissed on November 5, 2014.

30. On October 10, 2014, Blue Force Gear filed a Bid Protest with the GAO protesting a bid granted by the DLA. Currently, the Bid Protest is pending before the GAO.

31. On November 26, 2014, Blue Force Gear filed a Bid Protest with the GAO protesting a bid granted by the DLA. Currently, the Bid Protest is pending before the GAO.

32. Upon information and belief, at least some, if not all, of Blue Force Gear's Bid Protests are related to extra-judicial enforcement of the '601 Patent.

**The '601 Patent Issues with Indefinite Terms**

33. Shortly after Burnsed and Clark's meeting, the patent issued that was the subject of both their conversation and the earlier conversation with Vickers. The '601 Patent issued on May 27, 2014, and is entitled "Systems, Methods and Apparatus for Supporting a Firearm from a Person." And the Blue Force Gear® Vickers Combat Application Sling™ is cited in the '601 Patent as consumer product embodying the patented invention.

34. Consistent with the assertions made by Vickers and Burnsed during their conversations with Clark, the '601 Patent issued with claims directed towards a much broader scope of patent protection than had originally been sought. For example, the '601 Patent issued with broad and undefined claim terms such as "sling aperture," "slider element," "ring element," and "sling passage." These terms or their analogs are not discussed in the '601 Patent's written description, and are not used in the parent patent—U.S. Patent No. 8,430,285 (the '285 Patent).

35. However, despite Vickers and Burnsed's assertions, and as Clark unsuccessfully tried to explain, the Magpul sling is not a copy of the now-patented Blue Force Gear® Vickers Combat Application Sling™. And it does not infringe any valid claim of the '601 Patent. By way of example but not limitation, the Magpul sling:

- lacks the "ring element connected to the first opposed end," as required by the '601 Patent, Claim 1;
- lacks the "ring element . . . defining a sling aperture," as required by the '601 Patent, Claim 1;
- lacks the "slider element," as required by the '601 Patent, Claim 1 and 4-6; and
- lacks "the slider element defining a sling passage," as required by the '601 Patent, Claim 1 and 8.

36. Moreover, the broader scope renders the claims of the '601 Patent invalid because the patent's written description of the invention lacks adequate support for the now-claimed invention. For example, the written description does not discuss the term "sling passage" or an analog to the term. Similarly, the '601 Patent is invalid because, by way of another example but not limitation, it includes many terms that are indefinite, including, but not necessarily limited to "sling aperture" and "sling passage."

37. In addition, the '601 Patent is invalid for failing to satisfy the remaining requirements of 35 U.S.C. §§ 102, 103, and 112. For example, the claimed invention in the '601 Patent was in public

use and on sale in the form of the Safari-Tac Sling in 2004. These sales are more than a year prior to the '601 Patent's December 4, 2006 priority date.

38.   The Safari-Tac Sling practices each element disclosed in the '601 Patent's sole independent claim, claim 1. For example, some elements of the '601 Patent practiced by the Safari-Tac Sling include having two strap portions, an adjustable second strap that may be oriented as the forward strap, a slider element, a second strap with an intermediate portion and loop portion, a loop portion with an adjustable length, a serpentine sling passage, and a first strap that is longer than the second strap.

39.   In addition, U.S. Patent No. 7,069,624 entitled Attachment of a Sling (the Johnson Patent) renders the claims of the '601 Patent invalid as being anticipated or, in the alternative, obvious in light of the invention disclosed. The Johnson Patent has a priority date of August 6, 2004, which is more than two years prior to the '601 Patent's December 4, 2006 priority date.

40.   The Johnson Patent discloses all aspects of the '601 Patent that are relevant to the parties' dispute. For example, the Johnson Patent and '601 Patent both disclose two strap portions, an adjustable forward strap, a slider element, a loop portion with an adjustable length, use of a flexible strap material, and much more.

### FIRST CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of the '601 Patent)**

41.   Plaintiff incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs as though fully set forth herein.

42.   The making, using, selling, offering for sale, and/or importing of Magpul's MS1 Multi-Mission Sling, or later iterations such as the MS3 Gen II and MS4 Gen II slings, do not infringe the '601 Patent, directly or indirectly.

43.   Magpul's MS1 Multi-Mission Sling, MS3 Gen II Sling, and MS4 Gen II Sling do not infringe, literally or under the doctrine of equivalents, any valid claim of the '601 Patent.

44.   Magpul is not infringing, and has never infringed, any valid claim of the '601 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

45.   Magpul is entitled to judgment declaring that it has never infringed and is not infringing any valid claim of the '601 Patent.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of the '601 Patent)

46.   Plaintiff incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs as though fully set forth herein.

47.   An actual justiciable controversy exists between Magpul and Blue Force regarding the invalidity of the '601 Patent under 35 U.S.C. §§ 102, 103, and 112, for at least the reasons set out above.

48.   Accordingly, Magpul is entitled to judgment declaring that the claims of the '601 Patent are invalid.

## REQUEST FOR RELIEF

Therefore, Plaintiff requests for judgment:

1.   That Magpul has not infringed the '601 Patent's claims;

2.   That the '601 Patent's claims are invalid;

3.   That Magpul be awarded its costs of suit, and pre- and post-judgment interest on any money judgment;

4.   For such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Magpul demands a trial by jury of any and all issues on which a trial by jury is available under applicable law.

[signatures to follow]

Dated: December 18, 2014

        Respectfully submitted,

        By: /s/ Brian E. Mitchell

        Brian E. Mitchell
        Marcel F. De Armas
        MITCHELL + COMPANY
        4 Embarcadero Center, Suite 1400
        San Francisco, CA 94111
        Telephone: (415) 766-3515
        Facsimile: (415) 402-0058
        Email: brian.mitchell@mcolawoffices.com
              mdearmas@mcolawoffices.com

        By: /s/ Wiley A. Wasden, III

        By: /s/ William E. Dillard, III

        Wiley A. Wasden, III
        William E. Dillard, III
        Brennan, Wasden & Painter, LLC
        411 East Liberty Street
        Savannah, Georgia 31401
        Telephone: (912) 232-6700
        Facsimile: (912) 232-0799
        Email: wwasden@brennanwasden.com
              bdillard@brennanwasden.com

        Attorneys for Plaintiff
        MAGPUL INDUSTRIES, CORP.